1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEBRA JEAN FRAZIER, | No. 2:19-CV-1592-DMC |
| Plaintiff, | |
| v. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. ECF Nos. 8, 9. The case is thus before the Court for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Before the Court are the parties' briefs on the merits. ECF Nos. 16, 18. For the reasons discussed below, the Court remands to the Administrative Law Judge for further proceedings.

/ / /
/ / /
/ / /
/ / /
/ / /

# I. BACKGROUND

Plaintiff, Debra Frazier, is 61 years old. She applied for disability benefits in September 2015. CAR at 170, 179.[1]  She applied for Title II Social Security Disability Insurance, and Title XVI Supplemental Security Income.[2] Id. at 170, 179. Plaintiff alleged disability due to high blood pressure, high cholesterol, diabetes, depression, low thyroid, a learning disability, and a heart condition. E.g., id. at 203. The Commissioner denied Plaintiff's application initially and on reconsideration. Id. at 68–80, 82–98, 101–06, 110–14. Plaintiff sought review before an Administrative Law Judge (ALJ) and testified at a hearing before the ALJ on May 9, 2018. Id. at 36–67. The ALJ, on August 7, 2018, found that Plaintiff was not disabled because she could perform her past relevant work as an assembler. Id. at 18–30. Unsatisfied with the ALJ's decision, Plaintiff sought review before the Appeals Council (AC) on September 26, 2018. See id. at 164–66. A few days later, Plaintiff new counsel on appeal submitted a medical source statement from Plaintiff's treating mental health provider, Dr. Michelle Mercurio, Ph.D., that had not been submitted to the ALJ. See id. at 11–12. The AC declined to review the ALJ's decision. Id. at 1–4. Plaintiff subsequently sought review in this Court.

# II. STANDARD OF REVIEW

This Court may affirm, modify, or reverse a decision Commissioner of the Social Security Administration. 42 U.S.C. § 405(g). This Court's review of a final decision of the Commissioner Administration denying benefits under the Social Security Act, however, is limited in scope. Review of the Commissioner's decision is highly deferential. Ford v. Saul, 950 F.3d 1151, 1153–54 (9th Cir. 2020); Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015). When reviewing the Commissioner's decision, the Court will uphold a decision if it is supported by substantial evidence and applied the correct legal standards. 42 U.S.C. § 405(g); see Ford, 950 F.3d at 1153–54; Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). The Commissioner's findings on any fact, if supported by substantial evidence, are conclusive. 42

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on January 21, 2020. ECF No. 13.
[2] The Social Security Act provides for two types of disability benefits. The Act provides for Social Security Disability Insurance (SSDI) under Title II of the Act, and Supplemental Security Income under Title XVI of the Act. See 42 U.S.C. § 401 et seq.; see also 42 U.S.C. § 1381 et seq.

U.S.C. 405(g). In determining whether the Commissioner's findings are based on substantial evidence, the Court looks to the record as a whole. See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). The Court must consider both evidence that support's the Commissioner's decision and evidence that contradicts it. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).

Substantial evidence means more than a mere scintilla, but less than a preponderance. E.g., id.; Revels, 874 F.3d at 654. Substantial evidence is such relevant evidence as a reasonable mind could accept as adequate to support a conclusion. Garrison, 759 F.3d at 1009. If evidence is susceptible to multiple rational interpretations, one of which supports an ALJ's interpretation, then the ALJ's conclusion must be upheld. Revels, 874 F.3d at 654. It is the ALJ who is initially responsible for resolving ambiguities, determining credibility, and resolving conflicts in medical testimony and evidence. E.g., Garrison, 759 F.3d at 1009. Even if evidence is truly susceptible to more than one rational interpretation, the Court must uphold an ALJ's findings if they are supported by inferences reasonably drawn from the record. Ghanim v. Colvin, 763 F.3d 1154, 1159–60 (9th Cir. 2014). The Court, however, may only review the reasons that the ALJ provided for their decision, and cannot affirm the ALJ on grounds on which they did not rely. Revels, 874 F.3d at 654.

Finally, the Court will not reverse the Commissioner's decision if it is based on harmless error. E.g., Tommasetti, 533 F.3d at 1038. Harmless error exists when it is clear from the record before the Court that an ALJ's error was inconsequential to the ultimate determination of non-disability. E.g., id.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

### IV. ADMINISTRATIVE DETERMINATION

Plaintiff applied for social security benefits on September 10, 2015. See CAR 21. In the application, plaintiff claims disability began on November 9, 2012. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested a hearing, which was held on May 9, 2018, before Administrative Law Judge K. Kwon. In an August 7, 2018, decision, the ALJ concluded Plaintiff is not disabled. The Court only summarizes the ALJ's findings.

The ALJ applied the five-step analysis. CAR 22–30. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 10, 2015. Id. at 23. At step two, she determined that Plaintiff had two severe impairments, depression and post-traumatic stress disorder. Id. Moving to step three, the ALJ applied "Paragraph B" criteria to determine whether Plaintiff had an impairment or combination of impairments that satisfied (or equaled) the severity of an impairment listed under 20 C.F.R., Pt. 404, Subpart P, App. 1. Id. at 24. The ALJ found that Plaintiff did not have either extreme or marked limitations in a broad area of functioning such as the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Id.

Specifically, the ALJ found that Plaintiff had only mild or moderate limitations. Id. In applying Paragraph B criteria, the ALJ largely relied on a statement from Plaintiff's friend, Becky Barnham,[3] and a function report form completed on Plaintiff's behalf. Id. Plaintiff only had a mild a limitation because she could, for example, pay bills and write checks on her own. Id.

---

[3] The ALJ cites to exhibit 4E of the Certified Administrative Record when discussing Plaintiff's friend's statement, but the information she cites appears to come from the following exhibit 5E. See CAR at 24, 222–31.

Plaintiff, in interacting with others, only had a mild limitation even through her relationship with her daughter was estranged. Id. Plaintiff played bingo and attended church. Id.

Plaintiff, the ALJ found, nonetheless had a more significant, moderate limitation in terms of concentrating, persisting, or maintaining pace. Id. Plaintiff was able to do puzzle books, watch television, drive her daughter to work, and play Scrabble nightly with her mother. Id. ALJ Kwon then determined that Plaintiff only had experienced mild limitation in adapting or managing herself. Id. She did not need reminders to undertake personal care tasks, could prepare microwaveable meals, did her own laundry and cleaned her room, and shopped for groceries. Id.

In the light of Plaintiff's mild and moderate limitations, the ALJ concluded that Plaintiff did not have any marked or extreme limitations. Id. Paragraph B was thus unsatisfied. Id. The ALJ also noted that she considered "Paragraph C" criteria. Id. Paragraph C asks whether a claimant's mental impairment is serious and persistent (e.g., medically documented over the preceding two years), and requires both evidence of medical treatment of the impairment and marginal adjustment (minimal capacity to adapt to changes) on the part of the claimant. Id. Although acknowledging that Plaintiff had intermittent therapy, the ALJ found that Plaintiff had not shown an inability to adapt to changes or increased environmental demands. Id. For example, again relying on the function report, the ALJ noted that Plaintiff could do laundry, care for her grandchildren, attend doctors' appointments, read, prepare meals, and drive her daughter to work. Id. at 24–25. The ALJ concluded that Plaintiff's impairments did not satisfy Paragraph C. Id. at 25.

Before moving to step four, the ALJ calculated Plaintiff's residual functional capacity (RFC). Id. at 26. Noting that she considered all of Plaintiff's symptoms and medical records, the ALJ found that Plaintiff could perform the full range of work at all exertional levels and could perform very simple, routine jobs equivalent to unskilled work with a maximum specific vocational preparation (SVP) of two. Id.

The ALJ noted a history of mental health treatment, with significant depression and anxiety but generally normal function in areas like concentration and alertness. Id. at 27. Plaintiff was prescribed antidepressants that improved function and prevented further deterioration of her mental health. Id. The ALJ gave partial weight to opinions from several doctors, which the ALJ

concluded generally found that Plaintiff had no physical limitations such as postural issues. Id. at 28. Some opinions, while noting that Plaintiff was typically able to maintain concentration and care for herself, noted restrictions to include very simple, repetitive tasks, and difficulty with instructions. Id. Opinions also noted Plaintiff had some difficulty in functioning in social, occupational, and school settings but was generally able to function sufficiently. Id.

The ALJ considered Plaintiff's mental health history. Id. at 28–29. She noted that Plaintiff reported symptoms beginning in childhood. Id. at 28. She had some difficulty in school and reported attending special education classes. Id. Plaintiff was eventually diagnosed with depression and anxiety. Id. at 28–29. When Plaintiff first began counseling due to her diagnoses, she was depressed but was adequately groomed and demonstrated good hygiene. Id. at 28. She accurately completed some spelling and arithmetic tests. Id. The ALJ gave partial weight to a medical opinion diagnosing Plaintiff with major depressive disorder and generalized anxiety disorder but ruling out borderline intellectual function. Id. at 29. Plaintiff was mildly impaired in her ability to handle detailed instructions, maintain concentration, respond to others, and normally handle work situations and environmental changes. Id.

The ALJ then gave partial weight to Barnham's statement, finding that her statements of Plaintiff's functioning (e.g., ability to play Scrabble and pay bills) were consistent with the record. Id. The ALJ concluded, however, that Barnham's descriptions of Plaintiff's impairments as disabling were not consistent with the record, which indicated Plaintiff's mental conditions were managed with medications and some therapy. Id. The ALJ determined that although Plaintiff's impairments could cause her alleged symptoms, Plaintiff's description of the intensity, persistent, and disabling nature of the symptoms were not consistent with the record and Plaintiff's typically normal concentration and ability to undertake daily activities. Id.

In all, the ALJ concluded, in the light of the testimony, medical records, and medical opinions, Plaintiff possessed the residual functional capacity for simple, routine jobs. Id. Finally, at step four, the ALJ found that Plaintiff could perform past relevant work as an assembler. Id. The ALJ compared Plaintiff's residual functional capacity with the mental demands of work as an

assembler. Id. The ALJ accepted the testimony of a vocational expert in reaching her decision. Id. The ALJ, relying on her findings, found that Plaintiff was not disabled. Id.

Plaintiff sought review before the Appeals Council. Id. at 1. The Council denied review. Id. Plaintiff attempted to introduce the new statement from Dr. Mercurio. Id. at 2. The Council stated that the new evidence did not relate to any period of disability prior to the ALJ's decision. Id. at 2. The ALJ decision became the final decision of the Commissioner. Id. at 1.

## V. DISCUSSION

Plaintiff raises ten assignments of error. See ECF No. 3 at 2–3. Plaintiff argues that: (1) the ALJ was not appointed in accordance with the Appointments Clause of the United States Constitution and could not administer oaths; (2) the Appeals Council erred in not remanding the case for consideration of post-hearing medical source statements; (3) the ALJ failed to adequately develop the record regarding Plaintiff's cognitive impairment; (4) ALJ committed errors at Step Two by failing to determine the severity of certain conditions; (5) the ALJ committed reversible errors in assessing medical opinions;[4] (6) the ALJ did not give clear and convincing reasons based on substantial evidence for discrediting Plaintiff's testimony; (7) the ALJ impermissibly disregarded Becky Barham's third-party statement; (8) the ALJ's determination of Plaintiff's residual functional capacity (RFC) is not supported by substantial evidence; (9) the vocational expert's (VE) opinion does not support an adverse decision; and (10) the ALJ failed to develop Plaintiff's Title II claim, requiring remand for calculation and certification. Id. at 21–37.

### A. Appointments Clause:

Plaintiff argues that the Court should remand her case for a new hearing because ALJ Kwon was not properly appointed in accordance with the Appointments Clause of Article II of the United States Constitution. Id. at 21. Plaintiff relies on United States Supreme Court's decision in Lucia v. SEC, 138 S.Ct. 2044 (2018). Lucia held that ALJs of the Securities and Exchange Commission (SEC) are "Officers of the United States" subject to the Appointments Clause in Article II. Lucia, 138 S.Ct. at 2055. Plaintiff asserts that, when the ALJ conducted

---

[4] Plaintiff's fifth assignment of error includes five subparts alleging various reversible errors. ECF No. 16 at 26–29.

Plaintiff's hearing, she could not administer oaths, take evidence, or otherwise conduct a legitimate hearing. Id. Any decision from the ALJ was improperly based upon *ultra vires* actions. Id.

Plaintiff did not raise her constitutional challenge at the agency level, either before the ALJ or before the Appeals Council. See ECF No. 13 at 18. Defendant does not challenge that the ALJ was not constitutionally appointed at the time of the hearing, instead responding that Plaintiff waived the argument in not raising at the agency level. See ECF No. 18 at 13–20.

It appears likely that the ALJ was not constitutionally appointed at the time of her hearing. See, e.g., Arreguin v. Saul, No. 1:19-cv-01532-GSA, 2020 WL 6938820, at *9 (E.D. Cal. Nov. 25, 2020); Kari P. v. Saul, No.: 19-cv-00956-JLB, 2020 WL 6889202, at *11 (S.D. Cal. Nov. 23, 2020); Latosha N. v. Saul, No. ED CV 18-2475-SP, 2020 WL 1853310, at *7 (C.D. Cal. Apr. 13, 2020). But because the Court determines remand is appropriate on other grounds, the Court need not address the constitutional or waiver issues. E.g., Kari P., 2020 WL 6889202, at *11; see Nelson v. Saul, No. 2:19-cv-01382 AC, 2020 WL 3802726, at *2 (E.D. Cal. July 7, 2020).

**B. Appeals Council Errors:**

**1. The Parties' Arguments:**

Plaintiff argues that the AC erred in not remanding Plaintiff's case to the ALJ for consideration of a post-hearing medical source statement from Dr. Mercurio. ECF No. 18 at 22. Dr. Mercurio became Plaintiff's mental health care provider on March 12, 2018. Id. Dr. Mercurio's notes prior to the May 9, 2018 ALJ hearing diagnose Plaintiff with post-traumatic stress disorder (PTSD) alongside indications of depression, anxiety, and diminished intellectual function. Id.; CAR at 616. Plaintiff contends she saw Dr. Mercurio weekly. ECF No. 18 at 22; CAR at 57, 600-20.

Plaintiff's original counsel did not submit a statement from Dr. Mercurio to the ALJ. ECF No. 18 at 22. Plaintiff's second counsel, who began representing Plaintiff in October 2018, obtained and submitted a statement to the AC. See id. Dr. Mercurio completed a standard agency form instructing providers to check boxes corresponding to the level of difficulty a patient would have in a given area (e.g., understand instructions and complete a normal work day). CAR at 11–12. The form also requests a provider to state why a patient would have difficulty working a regular job. Id. Dr. Mercurio indicated that Plaintiff would have little or no ability to function in any work-

9

related situation listed on the form. Id. Dr. Mercurio observed that Plaintiff had significant impairments, including impaired short-term memory and severe PTSD. CAR at 11–12. She opined that Plaintiff could not comprehend reading or spelling, particularly when upset. Id.

The AC determined that the Dr. Mercurio's statement, submitted after the ALJ hearing, did not relate to the period at issue; namely, the period prior to August 7, 2018. Id.; CAR at 1–2. Plaintiff contends that Dr. Mercurio's statement, however, relates to her examinations of Plaintiff going back to March 2018. ECF No. 18 at 22. Plaintiff argues that it was error for the AC to deem immaterial a medical opinion based upon treatment preceding the hearing. Id. Plaintiff contends that, generally, if the AC did not consider a disputed medical opinion, the appropriate result is remand for further consideration. Id. at 22–23. But because the AC rejected evidence facially establishing disability, Plaintiff requests remand for calculation of benefits. Id. at 23.

Defendant concedes that, in reviewing an ALJ's decision, the Court reviews evidence submitted after the ALJ's decision. ECF No. 18 at 25. Yet, as with Dr. Mercurio's statement, opinions obtained after an unfavorable decision are less persuasive. Id. at 25–26. Moreover Dr. Mercurio's is not persuasive because of its brevity and "check-the-box" nature. Id. at 26. Substantial evidence indicates Plaintiff could satisfy competitive standards of employment, even if she had impairments like short-term memory loss. Id. Plaintiff regularly presented with appropriate hygiene, contrary to Dr. Mercurio's opinion that Plaintiff had little ability to manage herself. Id. (citing, e.g., CAR 11–12, 449, 474, 489, 491, 500, 533, 557, 614).

**2. Consideration of New Evidence:**

Regulations governing Social Security benefits permit claimants to submit new, material evidence to the Appeals Council.[5] 20 C.F.R. § 404.970(b). The Council must consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision and there is a reasonable probability of a different outcome. 20 C.F.R. § 404.970(a)(5); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). This Court must consider evidence that a claimant presented for the first time to

---

[5] The Appeals Council will only consider additional evidence if a claimant shows good cause for not submitting the evidence before. See, e.g., 20 C.F.R. § 416.1470(b). Defendant does not raise the issue of good cause. The Court considers the issue waived.

1    the AC if the AC considers that evidence in denying review of an ALJ's decision. Burrell v. Colvin,

2    775 F.3d 1133, 1136 (9th Cir. 2014); Brewes, 682 F.3d at 1163.

3           "Consider," however, is a term of art. The United States Court of Appeals for the

4    Ninth Circuit distinguishes between evidence that the AC *considered* in rejecting a claim on review,

5    and evidence that the AC merely *looked at* in determining that the evidence did not meet the

6    standard for consideration. See Amor v. Berryhill, 743 F. App'x 145, 146 (9th Cir. 2018) (citing

7    Lowry v. Barnhart, 329 F.3d 1019, 1024 (9th Cir. 2003)); Garcia v. Saul, No.: 1:19-cv-1103-JLT,

8    2021 WL 223205, at *3 (E.D. Cal. Jan. 22, 2021); Nicole R. v. Saul, No: 2:20-CV-3-FVS, 2020

9    WL 5750855, at *5 (E.D. Wash. Sept. 25, 2020); De Orozco v. Comm'r of Soc. Sec., 2019 WL

10   2641490 at*11 (E.D. Cal. June 26, 2019). If the AC does not consider the new evidence in denying

11   review, the new evidence does not become part of the record. See Brewes, 682 F.3d at 1163 ([T]he

12   administrative record includes evidence submitted to and *considered by* the Appeals Council.")

13   (emphasis added); see also Amor, 743 F. App'x at 146; Bales v. Berryhill, 688 F. App'x 495, 496

14   (9th Cir. 2017); Garcia, 2021 WL 223205, at *3. If, for instance, the Council merely *looked* at the

15   evidence in determining that it did not meet the standard for consideration, the new evidence does

16   not become part of the record. See Amor, 743 F. App'x at 146; Garcia, 2021 WL 223205, at *3. If

17   the Council merely looks at evidence and the evidence does not become part of the administrative

18   record, the Court may not consider it. See, e.g., Amor, 743 F. App'x at 146; Winkler v. Comm'r of

19   Soc. Sec., No.: 1:18-cv-0099-JLT, at *10 (E.D. Cal. Sept. 30, 2019).

20          The Court, moreover, does not have jurisdiction to review a decision of the Council

21   denying a request for review of an ALJ decision. Brewes, 682 F.3d at 1161; see Taylor v. Comm'r

22   of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011). The Appeals Council's decision

23   declining review is a non-final agency action. Brewes, 682 F.3d at 1161. If the Council declines

24   review, the ALJ's decision is the final decision of the Commissioner. Id. at 1161–62. The Court

25   considers the evidence submitted to and considered by the Council alongside the rest of the record,

26   but the Court cannot remand solely based upon the actions of the Council in denying review. Id.;

27   see Schuler v. Saul, 2020 WL 2744577, 2020 WL 2744577, at *5 (E.D. Cal. May 27, 2020).

28   / / /

Nevertheless, if the Appeals Council fails to "consider" additional evidence that satisfies the requirements of Section 404.970 or 416.1470, a remand for further proceedings is appropriate. Taylor, 659 F.3d at 1233; Garcia, 2021 WL 223205, at *3. Claimants seeking judicial review of the Appeals Council's decision not to consider additional evidence bear the burden of showing that the Appeal Council's decision was erroneous. Matias v. Saul, No. 19-00575 LEK-KJM, 2021 WL 531238, at 5 (D. Haw. Feb. 12, 2021); Garcia, 2021 WL 223205, at *3; White v. Cmm'r of Soc. Sec., No. 1:18-cv-1720 – JLT, 2020 WL 977893, at *9 (E.D. Cal. Feb. 28, 2020). Under social security regulations, a claimant's burden in seeking AC review of new evidence includes the burden of showing good cause for failing to present the evidence before, and a reasonable probability of a different outcome. See 20 C.F.R. §§ 404.970, 416.1470; Matias, 2021 WL 531238, at *5; Garcia, 2021 WL 223205, at *3.

### 3. Dr. Mercurio's Post-Hearing Statement:

Here, the AC did not consider Dr. Mercurio's statement. See CAR at 2. The AC indicated that the evidence did "not relate to the period at issue" and did not affect the ALJ's decision. Id. The AC only "looked at" the statement to decide it did not require consideration. See id.; see also Amor, 743 F. App'x at 146; Bales, 688 F. App'x at 496; Matias, 2021 WL 531238, at *5; White, 2020 WL 977893, at *9. When a plaintiff seeks review of the AC's decision not to consider new evidence, the plaintiff bears the burden of demonstrating the AC's decision was erroneous—that the evidence should have been considered. See Amor, 743 F. App'x at 146; Matias, 2021 WL 531238, at *5; White, 2020 WL 977893, at *9.

Defendant has not raised an issue of good cause. Plaintiff's burden here is thus to show that Dr. Mercurio's opinion relates to the period preceding the ALJ's decision and establishes a reasonable probability that the ALJ's decision would have been different had the ALJ had the evidence.[6] See, e.g., Matias, 2021 WL 531238, at *6–7; Garcia, 2021 WL 223205, at *3–4. First, it is not definitive, as Plaintiff suggests, that Plaintiff met weekly with Dr. Mercurio from March to October 2018. See, e.g., CAR at 49, 600–20. But Dr. Mercurio examined Plaintiff (or at minimum

---

[6] Plaintiff must also show that evidence that she wishes the AC to consider is new and material. See 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); see also, e.g., Garcia, 2021 WL 223205, at *3. The parties do not appear to dispute that Dr. Mercurio's statement is new and material. The Court does not address those factors.

1   made diagnoses) on at least a handful of occasions prior to both the May 2018 ALJ hearing, and

2   the ALJ's decision. See, e.g., id. at 600–20. Dr. Mercurio's statement relates to the period preceding

3   the ALJ's decision. The Court must therefore determine whether Dr. Mercurio's opinion establishes

4   a reasonable probability that the ALJ's decision would have been different had the ALJ seen it.[7]

5        The ALJ, of course, did not have Dr. Mercurio's post-hearing statement when

6   rendering her decision. But the ALJ did refer to Dr. Mercurio's notes from her examinations of

7   Plaintiff. See CAR at 27 (citing Ex. 14F). She cited to the notes (without mentioning Dr. Mercurio)

8   to note that Plaintiff had undergone psychotherapy between March and April 2018. Id. The ALJ

9   noted that Dr. Mercurio typically observed that Plaintiff presented normal mental status. Id. Those

10  notes factored into her conclusion that Plaintiff's impairments did not preclude an RFC to perform

11  simple, unskilled work. See id. Notably, the ALJ also concluded that Plaintiff's PTSD was severe.

12  Id. at 23. Plaintiff's PTSD diagnosis appears to be unique to Dr. Mercurio, and the ALJ's

13  determination of its severity ostensibly extends from Dr. Mercurio's notes. See id., 600–20.

14       Dr. Mercurio's medical source statement contradicts much of the medical evaluation

15  evidence from other providers that the ALJ considered. See id. at 11–12, 23–30, 600–20. Unlike

16  some of the other opinions' suggestions, Dr. Mercurio concluded that Plaintiff's impairments

17  drastically limited her capabilities. See id. at 11–23, 27–29. Several opinions from prior mental

18  health providers on which the ALJ relied noted that, although Plaintiff had impairments like

19  depression, she typically presented with normal concentration, pace, and ability to manage simple

20  tasks. See, e.g., id. at 27–28, 336, 446–51, 482–83, 535. Yet, several opinions (including from SSA

21  evaluators) on which the ALJ relied also noted mild to moderate limitations in following detailed

22  instructions; maintaining social function and concentration; and ability to respond to peers, change,

23  and day-to-day work situations. See, e.g., id. at 27–28, 75, 90–92, 446–51, 475. An opinion from

24  Dr. Sara Bowerman, Ph.D., which the ALJ discussed extensively, noted that Plaintiff's intellectual

25  function appeared to be in the borderline to low average range. Id. at 449–50.

26  _____

27  [7] Dr. Mercurio's statement might be less persuasive, but it cannot be rejected *only* because she completed it on a check-box form. See ECF No. 18 at 25–26; Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020); Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017); Burrell, 775 F.3d at 1140; Garrison v. Colvin, 759 F.3d 995, 1013 & nn. 12, 17 (9th Cir. 2014); but see Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Too, even if the opinion is entitled to less weight,

28  that is a far cry from being entitled to *no* weight.

Given that the ALJ apparently adopted Dr. Mercurio's PTSD diagnosis, Dr. Mercurio's opinion of any consequent disabling limitations logically bears directly upon their severity. See, e.g., 20 C.F.R. § 404.1527 (stating that, generally, the SSA will give greater weight to opinions from treating sources). Presumably, Dr. Mercurio's new source statement is based upon her notes and prior examinations of Plaintiff, which entitles it to at least some degree of weight. See, e.g., Burrell, 775 F.3d at 1140; Garrison, 759 F.3d at 1013; see also CAR at 11–12, 600–20. The Court notes, of course, that Dr. Mercurio's opinion observes significantly more dramatic limitations than much of the other evidence that the ALJ relied upon. See, e.g., id. at 11–12, 27–28, 336, 446–51, 482–83, 535. As Defendant points out, too, Dr. Mercurio's own notes also observe that Plaintiff typically presented talkatively and normally in attention, speech, grooming, and insight. ECF No. 18 at 27; CAR at 600–20. Dr. Mercurio's notes also observed that Plaintiff had significant difficulty completing assessments, maintaining relationships, and that Plaintiff had some difficulty subtracting from 100. CAR at 608–15.

The Court is unconvinced that the opinion will have a substantial effect on any reconsideration. There is a significant contrast between the severity of Plaintiffs limitations noted across the record and Dr. Mercurio's new source statement. But the Court has considered the record and eschews any prolonged recitation, dredging piece by piece through the evidence in this opinion to discuss every quantum of evidence supporting the ALJ's decision. The Court concludes that there is enough on the record substantiating Plaintiff's limitations generally, and Dr. Mercurio's observations specifically, that there is a reasonable probability that the outcome of the ALJ's decision would have been different had the ALJ seen the new opinion. By definition, a *reasonable* probability of a different outcome need not be a *conclusive* probability. Dr. Mercurio's opinion undermines the ALJ's conclusion that the severity and limiting effects of Plaintiff's symptoms do not establish disability. Were the ALJ to give greater weight to Dr. Mercurio's opinion than to the opinions to which she gave only partial weight, the ALJ's conclusion about Plaintiff's limitations might have been different.

The Court concludes that remand to the ALJ for further consideration in the light of the new evidence is appropriate. Taylor, 659 F.3d at 1233.

14

**C. The ALJ's Development of the Record Concerning Plaintiff's Cognitive Impairment:**

    **1. The Parties' Arguments:**

        In pertinent summary, the parties argue as follows. Plaintiff contends that record was insufficient to support evaluation of Plaintiff's cognitive impairment, and that the ALJ failed in her duty to develop the record. ECF No. 16 at 18. Dr. Bowerman theorized that Plaintiff may have borderline intellectual function, observed Plaintiff's mild to moderate impairments in several functional areas, and noted a need to rule out borderline function. Id. Yet, instead of commissioning an evaluation of Plaintiff's cognitive abilities (e.g., an IQ test), the ALJ ruled at step three that Plaintiff did not meet the criteria in Listing 12.05[8] (intellectual disorders) because the record contained no cognitive tests establishing Plaintiff's intellectual abilities. Id.

        Defendant responds that the evidence was sufficient to evaluate Plaintiff's claim. ECF No. 18 at 24. Two physicians, Dr. Jacobs and Dr. Dalton, reviewed Dr. Bowerman's conclusions and found no need for additional development. Id. The ALJ had substantial evidence (three opinions) to support her decision. Id. Dr. Bowerman's observation of possible borderline function informed her conclusion that Plaintiff had mild to moderate impairment in handling detailed work, but only mild impairment in handling simple work. Id. The ALJ's decision accommodated Dr. Bowerman's findings and limited Plaintiff to simple, routine work. Id.

        Plaintiff replies that Defendant does not contradict any fact supporting the ALJ's duty to develop the record. ECF No. 19 at 8. Namely, that Plaintiff was learning disabled and in special education in high school, sustained a head injury at 19, and that Dr. Bowerman concluded more testing was needed and that Plaintiff was impaired in several functional areas (e.g., ability to understand and remember instructions). Plaintiff notes that Listing 12.05 requires a disability finding if a claimant presents an IQ of 70 with impaired adaptive function. Id. at 9. Given the record's indications of intellectual limitations and Dr. Bowerman's noting possible borderline functioning, the record was insufficient for the ALJ to reach a conclusion on Plaintiff's intellectual function. Id. A fair record was required to include IQ tests. Id. (citing Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930–31 (9th Cir. 2014)).

---

[8] Listing 12.05 falls under 42 C.F.R., Part 404, Subpart P, Appendix 1.

1          **2.  Analysis:**

2                  "In Social Security cases, the ALJ has a special duty to develop the record fully and

3    fairly and to ensure that the claimant's interests are considered[.]" <u>Mayes v. Massanari</u>, 276 F.3d

4    453, 459 (9th Cir. 2001). ALJs have an independent duty to fully develop the record. <u>Tonapetyan</u>

5    <u>v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). But that duty is only triggered if there is ambiguous

6    evidence or if the record is inadequate to allow for proper evaluation of the evidence. <u>McLeod v.</u>

7    <u>Astrue</u>, 640 F.3d 881, 885 (9th Cir. 2011); <u>Mayes</u>, 276 F.3d 459–60. This is so even if a claimant

8    has counsel.[9] <u>Mayes</u>, 276 F.3d at 459; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996).

9                  It is the ALJ's duty to investigate facts and develop the arguments both for and

10   against granting benefits. <u>E.g.</u>, <u>Sims v. Apfel</u>, 530 U.S. 103, 111 (2000). An ALJ may not merely

11   assume the role of umpire; the ALJ must scrupulously and conscientiously probe into the matter

12   and actively explore for all relevant facts. <u>See</u> <u>Garcia</u>, 768 F.3d at 930–31; <u>Widmark v. Barnhart</u>,

13   454 F.3d 1063, 1068 (9th Cir. 2006). If there is an ambiguity in the evidence or the record is

14   inadequate for proper evaluation of evidence, the ALJ must undertake appropriate inquiry. <u>See</u>

15   <u>Tonapetyan</u>, 242 F.3d at 1151 (citing <u>Smolen</u>, 80 F.3d at 1288).  Additionally, in cases where a

16   claimant may be mentally ill and unable to adequately protect her own interests, the ALJ's duty to

17   develop the record is heightened. <u>Id.</u> at 1150. Indeed, in cases of mental impairment, the duty to

18   develop the record is especially important. <u>See</u> <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir.

19   1990). The ALJ's duty is greater still when a claimant is mentally impaired *and* unrepresented. <u>See,</u>

20   <u>e.g.</u>, <u>Tonapetyan</u>, 242 F.3d at 1151; <u>Anita D. S. v. Saul</u>, No. 19-cv-04480-RMI, 2021 WL 1022879,

21   at *6 (N.D. Cal. Mar. 17, 2021). Insofar as mental illness extends, a claimant need only raise a

22   suspicion of mental impairment to trigger the ALJ's duty to develop the record. <u>Jones v. Bowen</u>,

23   829 F.2d 524, 526 (5th Cir. 1987); <u>Anita D. S</u>, 2021 WL 1022879, at *6.

24                  Defendant's argument that the ALJ adopted Dr. Bowerman's findings, and thus

25   accommodated them, is well-taken. Dr. Bowerman did note that Plaintiff had possibly borderline

26   intellectual functioning and recommended additional testing to rule it out. <u>See</u> CAR at 449–50. But

---

27   [9] Defendant makes a point of stating that Plaintiff's counsel at the ALJ hearing did not suggest the record was
insufficiently developed. The point would seem to be irrelevant, given the ALJ's duty to develop the record exists
28   independently and regardless of whether a claimant has counsel. <u>E.g.</u>, <u>Tonapetyan</u>, 242 F.3d at 1151.

Dr. Bowerman further noted only mild to moderate impairments in relevant areas such as ability to handle complex instructions, responding to typical work situations, and maintaining concentration. Id. at 451. Dr. Jacobs and Dalton agreed with those findings. Id. at 75, 92. Both physicians found mild to moderate limitations in functioning, and recommended limitations to simple, semi-skilled work. Id. Other than Dr. Bowerman's note of possible borderline intellectual functioning, there is no real ambiguity in the evidence that the ALJ considered. See id. at 75, 92, 449–51.

The question therefore seems to be whether the evidence was insufficient to make a full and fair determination as to Plaintiff's cognitive impairment. It would seem, that the agreement between Dr. Bowerman, Dr. Jacobs, and Dr. Dalton as to the severity of Plaintiff's functional limitations establishes adequate evidence on which to evaluate Plaintiff's cognitive abilities. See id. at 75, 92, 449–51. However, the Court notes that Dr. Jacobs' and Dr. Dalton's findings related to Listings 12.02, 12.04, and 12.06.[10] Id. at 75, 92. This gives the Court reason for pause. Those listings concern organic mental disorders, affective disorders, and anxiety-related disorders. See id. Plaintiff contends that the ALJ erred in not developing the record as to Plaintiff's cognitive impairment and Listing 12.05, which covers intellectual disorders. See ECF Nos. 16 at 23–23; 19 at 8–11.

Given the general agreement across the record over the mild to moderate severity of Plaintiff's functional limitations, the Court is not entirely convinced that the ALJ lacked sufficient evidence to make a full determination over Plaintiff's cognitive limitations, even under Listing 12.05. Indeed, Paragraphs A and B of Listing 12.05 alike require *significant* deficits and subaverage functioning (e.g., in ability to care for oneself, understand information, or concentrate). See 42 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.05. The record indicates that Plaintiff's various exams have generally only found mild to moderate impairments and noted that Presented normally in areas like concentration and reasoning. See, e.g., CAR at 75, 92, 449–51, 481–82, 533–35, 611.

To Plaintiff's credit, when the ALJ considered Paragraph A specifically, she first observed that the record contained no cognitive examinations reflecting Plaintiff cognitive abilities. CAR at 25. The ALJ took no further action. Id. The ALJ, however, recognized: (1) that both Dr.

_____
[10] Listings 12.02, 12.04, and 12.06 fall under 42 C.F.R., Part 404, Subpart P, Appendix 1.

Jacobs and Dr. Dalton observed that Plaintiff performed well on various memory and concentration tests; (2) that Plaintiff was only in special education until high school and earned passing grades; (3) and that Plaintiff did not require others to care for her personal needs (and in fact cared for her grandchildren). Id. As to Paragraph B, to Plaintiff's further credit, the ALJ stated only that Plaintiff did not meet the criteria because the record contained no IQ test reflecting scores satisfying the requirements. Id. at 26. The ALJ did not expand or take further action to develop the record. Id.

The Court here agrees with Plaintiff contention that the ALJ's failure to further develop the record, such as by commissioning IQ or other cognitive tests to adequately determine whether Plaintiff met any criteria under Listing 12.05. In a circumstance such as this one, where a question resolves upon whether a claimant has an intellectual disability, and in which IQ scores serve as a basis for assessing that disability, a fully and fairly developed record must include a complete set of IQ scores. See Garcia, 768 F.3d at 930–31 (holding that ALJ's failure to ensure the record included a complete set of IQ results was error when determining that Plaintiff had impaired intellectual functioning but did not meet the criteria of Listing 12.05).

The ALJ always has a duty to fully and fairly develop the record to ensure that a claimant's interests are considered. Id. The ALJ did not do so here. Instead, the ALJ short-circuited the inquiry into Plaintiff's cognitive impairments by concluding (at least in part) that Plaintiff did not meet Listing 12.05 criteria because the record did not contain cognitive or IQ assessments. The Court recognizes that Plaintiff was represented by counsel, but an ALJ's duty to develop the record is especially apparent when a claimant may be mentally ill. See, e.g., Tonapetyan, 242 F.3d at 1151; DeLorme, 924 F.2d at 849.

On the whole, it is not certain from the record before the Court that Plaintiff would have been determined disabled had the record been more developed as to Plaintiff's cognitive impairment, possible borderline intellectual function, and Listing 12.05. But the Court also concludes that it is also not clear from the record that the ALJ's error was inconsequential to her ultimate determination of non-disability. See Garcia, 768 F.3d at 930–31. The Court remands to the ALJ for further proceedings and development regarding Plaintiff's cognitive functioning.

/ / /

18

**D.  The ALJ's Failure to Determine Severity of Illnesses at Step Two:**

Plaintiff contends that the ALJ erred at step two in failing to determine whether her anxiety, migraine headaches, and fibromyalgia are severe or non-severe. ECF No. 16 at 24. Plaintiff also argues that the ALJ erred in finding her hypertension and diabetes non-severe. Id.

**1.  Step Two of the Evaluation Process:**

At step two, the ALJ considers whether a claimant has "a severe medically determinable physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to undertake basic work activities. 20 C.F.R. § 404.1520(c). Progression to step three depends upon whether a claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii).

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). At step two, the claimant bears the initial burden of showing that she has a medically determinable, severe impairment or combination of impairments. See 20 C.F.R. § 416.920(a)(4)(ii), (c); Shaibi v. Berryhill, 883 F.3d 1102, 1106 (9th Cir. 2017); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). An impairment is medically determinable only when its existence can be shown through objective medical evidence such as laboratory findings and tests done using acceptable clinical diagnostic techniques. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). Irrespective of how many symptoms a claimant alleges, the existence of a medically determinable impairment cannot be established in the absence of objective medical abnormalities (i.e., medical signs and laboratory findings). Id.

An impairment or combination of impairments is not severe if evidence establishes a slight abnormality that only minimally affects an individual's ability to do basic work activities. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities include "physical functions such as walking, standing, sitting, lifting, and carrying." 20 C.F.R. §§ 404.1522(b), 416.922(b). If an ALJ erroneously fails to identify a severe impairment at step two but considers it at subsequent steps alongside a claimant's other impairments, the error at step two is harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

**2.  Analysis:**

**i.  Fibromyalgia:**

The record mentions fibromyalgia on three occasions. First, at the ALJ hearing, Plaintiff testified that a doctor treating her for pain mentioned fibromyalgia. CAR at 47. The ALJ asked if Plaintiff had been diagnosed with fibromyalgia, and Plaintiff replied that she had not. Id. Second, a healthcare provider apparently diagnosed fibromyalgia and noted possible addition of additional medication. Id. at 531. Third, Plaintiff reported pain to a healthcare provider, who offered alternative medication for fibromyalgia. Id. at 554.

The ALJ did not mention Plaintiff's fibromyalgia in the hearing decision. CAR at 21–30. Plaintiff contends that this is error because the ALJ is required to determine whether every impairment identifiable from the record is severe. ECF No. 16 at 24. Defendant responds that Plaintiff has not carried her burden of establishing a severe impairment. ECF No. 18 at 22.

The record demonstrates the existence of fibromyalgia. And the Court recognizes that step two is a *de minimis* threshold. E.g., Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). But Plaintiff has not produced evidence that fibromyalgia even minimally affects her ability to work. E.g., 20 C.F.R. §§ 404.1522(b), 416.922(b). Merely pointing to a diagnosis is insufficient. See, e.g., Klyse v. Colvin, 556 F. App'x 615, 615 (9th Cir. 2014) (citing Young v. Sullivan, 911 F.2d 180, 181, 183–85 (9th Cir.1990)); Castro v. Cmm'r of Soc. Sec., No. 2:19-cv-00298-KJN, 2021 WL 795578, at *3 (E.D. Cal. Mar. 2., 2021). Plaintiff has not carried her burden at step two.

**ii.  Anxiety Disorder:**

Plaintiff argues the ALJ erred failing to determine the severity of her anxiety disorder. EC No. 16 at 24. She contends that the evidence illustrates severe anxiety. Id. Plaintiff contends that here Dr. Bowerman concluded that an anxiety disorder was a causal factor in Plaintiff's functional limitations, and Becky Barham's third-party statement recounted Plaintiff's difficulties with anxiety. Id. Defendant responds that no prejudice came from the lack of a severity determination because the ALJ found other severe impairments and Plaintiff prevailed at step two. ECF No. 18 at 21. Moreover, Defendant argues that the ALJ accounted for Plaintiff's anxiety

1    disorder in calculating her RFC. Id. Plaintiff replies that Dr. Bowerman's conclusions satisfy step

2    two. Id.

3            As stated, the step two inquiry is a *de minimis* screening tool for disposing of

4    groundless claims. Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2005); Smolen, 80 F.3d at

5    1290. Step two is not meant to identify the impairments that must be considered when determining

6    an RFC. Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When determining a claimant's

7    RFC, an ALJ must consider limitations and restrictions imposed by all impairments, even those

8    that are *not* severe. Id. at 1049. The RFC should wind up the same, irrespective of whether a given

9    impairment is severe or non-severe. Id. If an ALJ fails to list a medically determinable impairment

10   at step two, but considers the limitations posed by the impairment in the RFC, any error at step two

11   is harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Newcomer v. Berryhill, 716

12   F. App'x 652, 653–54 (9th Cir. 2018); Castro, 2021 WL 795578, at *3; Gillit v. Cmm'r of Soc.

13   Sec., No. 2:19-cv-1542-KJN, 2020 WL 5074020, at *3 (E.D. Cal. Aug. 27, 2020).

14           Plaintiff is correct that the ALJ did not determine the severity of her anxiety

15   disorder. CAR at 23. And unlike fibromyalgia, the record illuminates an anxiety disorder that

16   imposed limitations on Plaintiff. See, e.g., id. at 73–76, 89–94, 446–51, 533–35, 539–45, 556, 611,

17   614, 600–20. But any error at step two was harmless. The ALJ considered Plaintiff's anxiety

18   diagnoses when calculating Plaintiff's RFC. See CAR at 27–29. Indeed, the ALJ accounted for

19   each of the limitations that Dr. Bowerman identified as extending from Plaintiff's anxiety disorder.

20   Id. at 29. Namely, that Plaintiff was mildly impaired in ability to carry out simple instruction; mildly

21   to moderately impaired in ability to understand detailed, complex instructions; mildly impaired in

22   her ability to maintain concentration and attention; mildly impaired in her ability to respond to

23   others; and mildly impaired in her ability to respond to work situations and deal with changes. Id.

24   (discussing CAR at 451). The ALJ also noted that Plaintiff's mood, anxiety, and possible cognitive

25   disorders mildly impaired her ability to interact with others in socially acceptable ways. Id.

26           The RFC at which the ALJ arrived accounted for Plaintiff's functional limitations

27   extending from her anxiety disorder. See id. at 26–30. The ALJ limited Plaintiff to simple, routine,

28   and unskilled work as providers indicated was appropriate in the light of Plaintiff's limitations. See,

e.g., id. at 26, 73–76, 89–94, 451. Plaintiff has not sufficiently identified what additional limitations the RFC should have included. The Court finds no reversible error in the ALJ's step two analysis.

### iii.   Migraine Headaches:

Plaintiff asserts that the ALJ also erred at step two in failing to ascertain whether her migraine headaches were severe. ECF No. 16 at 25. Plaintiff notes that Dr. Kinoshita diagnosed Plaintiff with migraines, that she testified that she frequently suffers from migraines every other day, and that Barham confirms Plaintiff's testimony. Id. (citing CAR at 45, 225, 356–57). Plaintiff testified that she lays in the dark when she gets headaches. CAR at 59. Barham's statement indicated Plaintiff's migraines have progressively worsened and confine her to bed for a couple of days at a time. Id. at 224.

Defendant responds that Plaintiff mischaracterizes the evidence of her migraines. ECF No. 18 at 22. Plaintiff had one emergency room visit, which occurred before her application date, and Plaintiff's symptoms improved with medication. Id. (citing CAR at 538). Dr. Rowlands and Dr. Eskander, agency evaluators, concluded Plaintiff's various impairments were non-severe even considering Plaintiff's emergency room visit among. Id. (citing CAR at 74). Plaintiff only testified that migraines were frequent only in "really bad weeks." Id. (citing CAR at 59). Defendant argues Plaintiff conceded over-the-counter medication relieves her headaches. Id.

The Court concludes that both parties exaggerate. First, when Dr. Kinoshita examined her, Plaintiff's complaints were high blood pressure and a headache. CAR at 356. Plaintiff reported a history of migraines, but Dr. Kinoshita diagnosed Plaintiff with a migraine on that occasion, not a migraine condition. See id. at 356–57. And when Plaintiff testified, she limited the occasions on which she has headaches every other day to "really bad weeks." Id. at 59.

Second, to the extent that Defendant's argument implies that Dr. Rowlands' and Dr. Eskander's findings indicated Plaintiff's migraines were non-severe, Defendant overstates the evidence. Dr. Rowlands and Dr. Eskander noted Plaintiff's visit with Dr. Kinoshita and the separate visit to the emergency room for headache. CAR at 73–74, 89. Dr. Rowlands did note that the exams from Plaintiff's visit with Dr. Kinoshita were unremarkable. Id. at 73–74. But neither physician made an express finding as to Plaintiff's migraines. See id. 73–74, 89. Finally, contrary to

1   Defendant's assertion, although Plaintiff testified that she takes aspirin when she gets a headache,

2   she did not testify that over-the-counter medication *relieves* her headaches. Id. at 59

3          The record demonstrates Plaintiff has experienced migraines. See id. at 73–74, 89,

4   356–58. But the Court concludes that Plaintiff has not met her initial burden of showing a medically

5   determinable, *severe* impairment. See Garcia, 2021 WL 223205, at *5; Akin v. Saul, No.: 1:19-cv-

6   0608 JLT, 2020 WL 5202056, at *5 (E.D. Cal. Sept. 1, 2020). Assuming that the evidence on the

7   record is sufficient to establish that her migraines are a medically determinable impairment,[11]

8   Plaintiff must still show that the impairment was severe. 20 C.F.R. § 416.920(a)(4)(ii). (c); Garcia,

9   2021 WL 223205, at *5. The existence of an impairment alone is insufficient proof of a disability.

10  E.g., Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); Garcia, 2021 WL 223205, at *5.

11         Plaintiff has not produced any medical evidence that migraines significantly limit

12  her ability to undertake basic work activities. 20 C.F.R. §§ 404.1522(b), 416.922(b); Akin, 2020

13  WL 5202056, at *5. The mere fact that she gets migraines is insufficient by itself. E.g., Matthews,

14  10 F.3d at 680; Garcia, 2021 WL 223205, at *5; Akin, 2020 WL 5202056, at *5. The Court, of

15  course, considers Plaintiff's testimony and Barham's statement. And the Court does not wish to

16  imply that it doubts Plaintiff's migraines or the pain that they cause. But Plaintiff does not

17  adequately identify any functional limitations that may be attributed to migraines. See 20 C.F.R.

18  §§ 404.1522(b), 416.922(b); ECF No. 16 at 24–25. Plaintiff fails to carry her burden at step two.

### iv.   Hypertension and Diabetes:

20         Plaintiff contends that the ALJ erred in finding that her hypertension and diabetes

21  were non-severe. ECF No. 16 at 25. The Court disagrees. The ALJ determined that both Plaintiff's

22  hypertension and diabetes were controlled with medication and had minimal symptoms. Although

23  the ALJ did not expand, the Court does not find error.

24         First, as to hypertension, Plaintiff argues that in one instance Plaintiff became so

25  dizzy from hypertension that she fell and broke her nose and had a CAT scan to rule out fracture.

26

27  [11] As stated earlier, an impairment is medically determinable if its existence can be established through objective medical evidence. E.g., Ukolov, 420 F.3d at 1005; Garcia, 2021 WL 223205, at *4. Symptoms alone are insufficient.

28  Ukolov, 420 F.3d at 1005; Garcia, 2021 WL 223205, at *4. The Court assumes that evidence like Dr. Kinoshita's diagnosis of Plaintiff's migraine on one occasion satisfies the requirement.

Id. (citing CAR at 579–93). This is not precisely clear. Plaintiff did fall and break her nose, but no physician concluded that she fell because she was hypertensive. CAR at 580–93. The record demonstrates that Plaintiff regularly had prescriptions meant to control hypertension, but it does not indicate—and Plaintiff does not offer—any other evidence that hypertension has more than a minimal effect on Plaintiff's ability to do basic work activities. See, e.g., id. at 73–74, 89, 206, 336, 340, 380–82, 471, 514, 580–93. Substantial evidence supports the ALJ's conclusion that Plaintiff's hypertension is minimally symptomatic and not severe.

Second, as to diabetes, Plaintiff argues that her diabetes is poorly controlled even on medication. ECF No. 16 at 25. She cites to her testimony and contends that she has abnormally high A1C readings even with medication.[12] Id. (citing CAR at 56). The ALJ noted that Dr. Wagner, a consultative examiner, diagnosed Plaintiff with diabetes with no obvious organ damage in December 2015. CAR at 27–28. The ALJ also noted that treatment records indicate monitoring of Plaintiff's diabetes. Id. at 27. Those notes establish that Plaintiff regularly received testing supplies to monitor for diabetes but do no not indicate any functional limitations. See id. at 369–409. But the record does not demonstrate (and again Plaintiff does not show evidence of) diabetic symptoms interfering with Plaintiff's ability to undertake basic work activities.[13] See, e.g., id. at 74, 80, 91, 97, 101, 333–38, 341, 350, 443, 514–16, 524, 555, 596. The ALJ's conclusion that Plaintiff's diabetes is non-severe and minimally symptomatic was thus supported by substantial evidence.

### E. The ALJ's Assessments of Medical Opinion:

Plaintiff raises four errors concerning the ALJ's assessment of medical opinions. ECF No. 16 at 26–29. She contends that the ALJ (1) did not identify portions of opinions credited; (2) failed to discuss Dr. Mercurio's opinions; (3) inaccurately afforded Dr. Bowerman's opinions partial weight; and (4) offered inaccurate reasons for the weight afforded to opinions of agency reviewers.  Id. Because the Court concludes that the ALJ must further consider Dr. Mercurio's post-

---

[12] For the purposes of clarity, the Court notes that A1C tests measure blood sugar to test for diabetes. See, e.g., *Diabetes Tests*, CDC https://www.cdc.gov/diabetes/basics/getting-tested.html (last visited Mar. 18, 2021).
[13] Dr. Eskander, in rating Plaintiff nondisabled, did note that Plaintiff's high blood pressure, high cholesterol, diabetes, low thyroid, heart condition, depression, and learning disability collectively resulted in some limitations on Plaintiff's ability to do work-related activities. CAR at 97. So did the review of Plaintiff's initial application for Supplemental Security Income. Id. at 110. The limitations did not prevent performance of past relevant work. E.g., id. at 97, 110.

hearing opinion on remand, and below that the ALJ erred in assigning weight to the cited medical opinions generally, the Court only addresses Plaintiff's first argument.

### 1. Assessing Medical Opinions:

In evaluating medical evidence from different physicians, the Ninth Circuit and social security regulations distinguish amongst opinions from types of physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also 20 C.F.R. § 404.1527(c). The Ninth Circuit classifies three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830.

A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Commissioner will generally also give greater wight to opinions from examining physicians than opinions from non-examining physicians. 20 C.F.R. § 404.1527(c)(1). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. Lester, 81 F.3d at 830.

In other words, physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The weight given to an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. 20 C.F.R. § 416.927(c)(3)-(6). Furthermore, the ALJ need not accept any physician's opinion if it is brief, conclusory, and unsupported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ errs when the ALJ rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. Garrison, 759 F.3d at 1012–13. An ALJ, however, is not required to discuss evidence that is neither significant nor probative. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.2003).

1   ///

2   ///

3   **2.   The ALJ's Assignment of Weight to the Medical Opinions:**

4       The ALJ had six opinions before her when she rendered her decision. Those

5   opinions were from examining physician Dr. Wagner, examining psychologist Dr. Bowerman,

6   agency medical records reviewers Dr. Rowlands and Dr. Eskander, and agency mental health

7   records reviewers Dr. Jacobs and Dr. Dalton. See CAR at 28–29. The ALJ afforded each of the

8   opinions partial weight. Id.

9       The ALJ gave Dr. Wagner's opinion partial weight because it was "consistent with

10   the minimal evidence of physical problems in the record. It was based on an in-person examination.

11   It [was] contained in a detailed and thorough report." Id. 28. Similarly, she gave Dr. Rowlands' and

12   Dr. Eskander's opinion partial weight because they were "consistent with the physical consultative

13   examination with findings within normal limits." Id. The ALJ assigned partial weight to Dr. Jacobs'

14   and Dr. Eskander's opinion because they were "familiar with the Social Security Administration's

15   disability programs and their evidentiary requirements." Id. Finally, she gave partial weight to Dr.

16   Bowerman's opinion because it was based on a thorough review of the file, and Dr. Bowerman's

17   conclusions concerning Plaintiff's mental limitations were consistent with Plaintiff's performance

18   during the mental status exam. Id. at 29. The ALJ went on to note that her calculation of Plaintiff's RFC

19   was partially supported by the medical opinions.[14] Id. at 30.

20       Whether the ALJ provided sufficient reasons for her assessments of partial weight

21   is, in the Court's view, close to the line. The ALJ credited the opinions because of their consistency

22   with Plaintiff's various examinations. Nevertheless, the Court finds that the ALJ's explanations for

23   her assessments of weight are just shy of the mark. Although the ALJ noted that her assessments

24   of partial weight were generally based on consistency with the evidence, she did not adequately

25   state which portions of the opinions she was adopting and which she was rejecting, if any.

26

27   _____

28   [14] It is somewhat unclear whether the ALJ means that the medical opinions partially support the RFC in that they are discrete pieces of evidence amongst others, or if only portions of the individual opinions support the RFC.

The opinions, for example on Plaintiff's mental impairments, are generally consistent with one another. Nevertheless, there are *very* minor disagreements amongst them; for instance, amongst how the physicians rated Plaintiff's ability to respond to work changes and get along with others. Compare, e.g., CAR at 78, with CAR at 451. If the ALJ rejected some portion of an opinion and not of another, the Court concludes that under the circumstances here she had to do more than say that she was awarding partial weight because the opinions were consistent.  If an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, the ALJ errs. Garrison, 759 F.3d at 1013.

Without more explicit explanations from the ALJ on how she weighed the opinions, and what (if anything) she rejected, the Court concludes that there was error.[15] The Court determines that remand is appropriate for more substantive and specific assessment of the weight given to the various medical opinions.

**F. The ALJ's Discrediting Plaintiff's Testimony:**

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discrediting Plaintiff's testimony about the extent of her pain and limitations. ECF No. 16 at 30–32. Broadly stated, Defendant replies that the ALJ sufficiently found that Plaintiff's treatments have generally been effective, that Plaintiff had gaps in her treatment, and that Plaintiff regularly undertook daily activities. ECF No. 18 at 28–31. The Court agrees with Plaintiff.

**1. Standard for Determination of a Claimant's Credibility:**

The Ninth Circuit has held that, when the record includes objective medical evidence indicating that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an adverse credibility determination must be based on specific, clear and convincing reasons. Brown-Hunter v. Colvin, 806 F.3d 487, 492–93 (9th Cir. 2015); Carmickle, 533 F.3d at 1160. The only time the clear and convincing standard does not apply is when there is affirmative evidence that a claimant is malingering. Brown-Hunter, 806 F.3d at 492–93; Carmickle,

---

[15] Other than, perhaps, the implication that the opinions were generally consistent with one another and thus entitled to equal footing, the Court notes that the ALJ did not state why Dr. Bowerman's and Dr. Wagner's opinions, as examining providers, were not entitled to greater weight than the agency's reviewing physicians' opinions (e.g., Dr. Rowlands'). See CAR at 26–30; see also 20 C.F.R. § 404.1527(c)(1). It is unclear whether this alters anything, but the fact remains.

533 F.3d at 1160. The reasons an ALJ provides for rejecting a claimant's testimony about their pain must be both specific *and* clear and convincing, not either or. Burrell, 775 F.3d at 1136. General findings are unsatisfactory. Brown-Hunter, 806 F.3d at 493.

More specifically, the Ninth Circuit has adopted a two-step test for determining the extent to which an ALJ must credit the claimant's report of their symptoms. First, the ALJ must ascertain whether a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Revels, 874 F.3d at 655. A claimant need not show that an impairment could reasonably be expected to cause the severity of the symptom, only that it could reasonably have caused some degree of the symptom. Id. Neither must a claimant produce objective medical evidence of the pain or symptom itself. Id. Second, and as stated, in the absence of malingering, an ALJ may only reject a claimant's testimony about the severity of their symptoms by offering specific, clear and convincing reasons for doing so. Id. This final question is a high bar. See id. The clear and convincing standard is the most demanding standard required in Social Security cases. Id.

An ALJ, of course, is not required to believe every allegation. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir. 2014). But the ALJ's reasons for discounting or rejecting a claimant's subjective-symptom testimony must be specific enough to permit the Court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d at 483. The ALJ must identify the testimony from the claimant that they find incredible and explain what evidence undermines it. Treichler, 775 F.3d at 1102.

Factors that an ALJ may consider in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). An ALJ may also consider ordinary factors such as (1) "the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and]

28

(2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284); Reeves v. Cmm'r of Soc. Sec., No. 1:20-cv-00080-SAB, 2021 WL 929612, at *5–6 (E.D. Cal. Mar. 11, 2021).

An ALJ, however, may not use activities of daily living as a catch-all factor. See, e.g., Garrison, 759 F.3d at 1015–16. Impairments impeding work do not always confine a claimant to bed. Id. Claimants can be expected to try to lead normal lives. See id. Many home activities do not easily transfer to the workplace. Id. Only when a claimant's level of activity is inconsistent with their claimed limitations do the daily activities bear upon credibility Id. Nevertheless, if a claimant can spend a substantial amount of time engaged functions that are transferable to the workplace, a specific finding as to that circumstance may be sufficient to discredit an allegation of pain. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

## 2. The ALJ's Determination of Plaintiff's Credibility:

At the first question, the ALJ concluded that Plaintiff's medically determinable impairments could produce the symptoms of which she complains. CAR at 29. Moving to the second step, the ALJ found no evidence of malingering. See id. More accurately, she did not expressly state that she found malingering. See id. The Court assumes that the ALJ found no malingering.

At the second question, however, the ALJ discredited Plaintiff's statements. Id. She provided a handful of reasons. Id. at 29–30. First, the ALJ found that Plaintiff's statements regarding the severity of her symptoms was inconsistent with the evidence. Id. at 29. Second, she found that "the allegations" were inconsistent with medical evidence and Plaintiff's daily activities. Third, the ALJ summarized evidence that she determined contradicted Plaintiff's allegations. Id. at 29–30. As discussed below, the Court finds that the ALJ's findings do not pass muster.

### i. Inconsistency with Medical Evidence:

The ALJ found that Plaintiff's statements on the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 29. Although the ALJ seems

to have implied that she refers to all of Plaintiff's mental health symptoms, it is uncertain whether the ALJ refers to all or only some of them. See id. This is inadequate.

Even considering the ALJ's statement with the rest of her discussion rejecting Plaintiff's credibility, the statement is too nonspecific. Plaintiff's point that the ALJ does not identify which portions of Plaintiff's testimony are inconsistent with what evidence is well-taken. ECF No. 16 at 31. An ALJ must *specifically* identify testimony from a claimant that she finds incredible and explain what evidence undermines it. Treichler, 775 F.3d at 1102. Here, the ALJ only characterized the record in general. If the ALJ believed that evidence did not corroborate Plaintiff's description of a symptom, she must identify both the symptom and the conflicting evidence. See id. Although the ALJ goes on to briefly mention concentration and improvement in symptoms in later paragraphs, that is not enough to salvage the ALJ's open-ended conclusion because she did not identify the portions of testimony that she found incredible. See, e.g., id. An ALJ may not simply conclude that a claimant's limitations are less serious than alleged based upon unspecified testimony and summarized medical evidence. Brown-Hunter, 806 F.3d at 493.

### ii.  Daily Activities:

The ALJ secondly determined that "the allegations" are inconsistent with the evidence and Plaintiff's pursuit of daily activities. CAR at 29. The ALJ noted that Plaintiff drives her grandchildren, watches television, plays Scrabble, goes to bingo, attends church services, does her own cleaning and laundry, and volunteered to help homeless people. Id.

The ALJ's conclusions here do not meet the clear and convincing standard for the same reason above. The ALJ, while possibly implying that she means all of Plaintiff's symptoms, broadly states that "the allegations" clash with Plaintiff's activities of daily living. Id. She does not state which symptoms conflict. Id. General findings do not satisfy the requirement that an ALJ discredit a claimant's testimony with clear and convincing reasons. Brown-Hunter, 806 F.3d at 493.

Although engaging in daily activities that are incompatible with the severity of symptoms alleged can support adverse credibility determinations, Plaintiff can be expected to try and pursue a normal life. E.g., Garrison, 759 F.3d at 1015–16; Orn, 495 F.3d at 639. If the ALJ believed that Plaintiff's activities were incompatible with her alleged symptoms, she was required

specifically find that Plaintiff engaged in activities involving skills transferrable to a workplace setting. See, e.g., Garrison, 759 F.3d at 1015–16; Orn, 495 F.3d at 639; but see Valentine v. Cmm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009). General identification of Plaintiff as able to do things like drive and attend church is not a clear and convincing reason to discredit Plaintiff's testimony. Garrison, 759 F.3d at 1015–16; Orn, 495 F.3d at 639; see Burrell, 775 F.3d at 1138.

### iii.   The ALJ's Summary of Evidence:

The ALJ described evidence that she determined clashed with Plaintiff's allegations. CAR at 29–30. She cited treatment records covering 2013 to 2016 indicating that Plaintiff typically had normal concentration, good judgment and insight, and appropriate reasoning. Id. She stated that there are gaps in Plaintiff's mental health treatment, with minimal treatment after 2016, but did not cite to the record. Id. at 30. The ALJ also noted that Plaintiff has improved with medication and cited to a record from 2013 that observed some improvement in Plaintiff's depression with anti-depressants. Id. The ALJ then determined some of Plaintiff's stressors may be situational rather than medical; for instance, stress related to her living situation and mother with dementia. Id.

Although the ALJ's reasoning is more specific here, the Court concludes that it still does not meet the higher standard of specific, clear and convincing reasoning.[16] The ALJ again failed to identify which of Plaintiff's statements she found not credible and why.[17] Id. at 29–30. More or less, the ALJ just stated her credibility determination and then summarized evidence purportedly supporting it. See id. For example, the ALJ's statement that the record reflects gaps in Plaintiff's treatment is left entirely to stand on its own Id. at 30. She did not identify which of

---

[16] Defendant, in arguing that the ALJ offered specific, clear and convincing reasons to discredit Plaintiff's testimony discusses evidence that the ALJ did not cite when she discredited Plaintiff's testimony. See CAR at 29–30; ECF No. 18 at 28–31. In Defendant's defense, the ALJ states that Plaintiff's statements are inconsistent with evidence and the record for "the reasons explained in this decision." CAR at 29. But, other than the instances in which she does cite a record, the ALJ is not specific about what she relied upon. The Court recognizes that the ALJ's passing incorporation of the record creates a fuzzy situation. It might seem to permit the Court to dredge the record and decision for any evidence supporting the ALJ's credibility determination. But well-defined precedent counsels restraint. See, e.g., Revels, 874 F.3d at 654. The Court can review only the reasons provided by the ALJ in her disability decision and cannot affirm her decision on grounds on which she did not rely. Id. The grounds upon which the ALJ's decision must be reviewed are those upon which the record indicates her decision was based. Id. (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); see Treichler, 775 F.3d at 1102. The Court will thus not isolate specific pieces of evidence to support the ALJ's decision when it is not clear whether she relied upon them.

[17] The ALJ's discussion of Plaintiff's depression and concentration necessarily implies that the ALJ found some fault in Plaintiff's statements regarding those issues. But the ALJ still neglected to identify any specific allegations and how they were unsupported. CAR at 29–30.

1  Plaintiff's allegations the finding undermines. Id. The ALJ's recitations are not the kind of specific

2  reasons the Court must have in order to meaningfully review the ALJ's credibility decision to

3  ensure the ALJ did not arbitrarily discredit Plaintiff's testimony. E.g., Brown-Hunter, 806 F.3d at

4  493. Such a nonspecific finding is again inadequate. Treichler, 775 F.3d at 1102.

5  ///

6  **G.  The ALJ's Assessment of Becky Barham's Lay Witness Statement:**

7  Plaintiff argues that the ALJ erred in granting only partial weight to lay witness

8  Barham's statement because the ALJ did not specifically identify which portions she rejected. ECF

9  No. 16 at 33. Plaintiff also argues that it was improper to disregard Barham's statement just because

10  it was lay testimony. Id. (citing Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Defendant

11  responds that Plaintiff is incorrect, and that the Ninth Circuit has expressly held that an ALJ may

12  reject lay statements when they conflict with medical testimony. ECF No. 18 at 31. Plaintiff does

13  not reply. The Court agrees with Defendant.

14  Lay witness testimony is certainly valuable under Ninth Circuit precedent, but

15  rejection of a third-party lay statement entails a lower standard the than does rejection of claimant's

16  testimony. Revels, 874 F.3d at 655; Diedrich, 874 F.3d at 640; Gregor v. Barnhart, 464 F.3d 968,

17  972 (9th Cir. 2006). An ALJ must consider lay witness testimony about a claimant's symptoms

18  unless the ALJ expressly determines to disregard that testimony and provides reasons germane to

19  that witness for doing so. Diedrich, 874 F.3d at 640; Gregor, 464 F.3d at 972.

20  Insofar as Plaintiff believes that an ALJ cannot permissibly reject lay testimony

21  because of inconsistency with medical evidence, she is incorrect. To her credit, there appears to a

22  small measure of ambiguity in Ninth Circuit precedent. Compare Gregor, 464 F.3d at 92, and Lewis

23  v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001), with Diedrich, 874 F.3d at 640, and Bruce v. Astrue,

24  557 F.3d 1113, 1116 (9th Cir. 2009).[18] Diedrich v. Berryhill, which Plaintiff cites as support, states

25  that "a lack of support from the 'overall medical evidence' is . . . not a proper basis for disregarding

26  [lay] observations." Diedrich, 874 F.3d at 640. Lewis v. Apfel, however, which is one of the cases

27  

---

28  [18] Bruce states:  Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record. Bruce, 557 F.3d at 1116.

Defendant cites, expressly states that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511. Other Ninth Circuit cases have recognized the same. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Given their holdings on an ALJ's ability to reject lay testimony that conflicts with medical evidence, the cases could appear to be at odds with each other

The Ninth Circuit itself has recognized the distinct holdings. See Burkett v. Saul, 806 F. App'x 509, 512–13 (9th Cir. 2020). That Court stated: "[i]nconsistency with medical evidence" is one reason that this Court has concluded is germane [in rejecting lay witness testimony,] although this Court has also concluded that "a lack of support from the 'overall medical evidence' is . . . not a proper basis for disregarding [lay] observations." Id. (citations omitted). As the Court aptly implies, any conflict amongst cases like Diedrich and Lewis is a conflict only at first gloss. See id. at 513. Diedrich and related holdings preclude an ALJ from rejecting lay witness testimony because it is not *corroborated* by overall medical evidence. See id.; Diedrich, 874 F.3d at 640; Bruce, 557 F.3d at 1116. Lewis and similar holdings permit an ALJ to reject lay testimony that is *inconsistent* with medical evidence. Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511.

Here, the ALJ discredited much of Barham's statement because Barham's "statements are not consistent with the allegations of disabling mental impairments and the medical record as a whole . . . ." ECF No. 29. The ALJ did not reject Barham's testimony just because it generally lacked support. See id. This case thus falls under cases such as Lewis, in which an ALJ may reject lay testimony that is inconsistent with medical evidence. See Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511. Because inconsistency with medical evidence is a germane reason to reject lay witness testimony, the ALJ did not err in discounting (at least partially) Barham's statements. See Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511; see also Burkett, 806 F. App'x at 512–13.

**H.  Whether Substantial Evidence Support's the RFC:**

Plaintiff argues that because the ALJ did not properly weigh the evidence or correctly consider all of Plaintiff's impairments, the RFC is wrong. ECF No. 16 at 33. Because, however, the Court has determined that remand is appropriate for further consideration of Dr. Mercurio's post-hearing opinion, further consideration of Plaintiff's cognitive function, and more

substantive assessment of the weight given to medical opinions, the universe of evidence in this case has changed. Determination of Plaintiff's RFC may change in the light of the new information. And, in any event, what information may qualify as substantial evidence has changed. The Court accordingly does not address this argument.

**Hypothetical Posed to the Vocational Expert:**

Plaintiff claims that the vocational expert's opinion in this case does not support an adverse decision because the ALJ posed a hypothetical that omitted some of Plaintiff's limitations and impermissibly included an SVP component. ECF No. 16 at 35. Because the Court will remand for consideration of Dr. Mercurio's opinion and Plaintiff's cognitive function, however, there may be new vocational findings. The Court need not address this argument.

**I.   The ALJ's Failure to Develop Plaintiff's Title II Claims:**

Plaintiff applied for both Title II and Title XVI benefits. CAR at 170–85. The ALJ only addressed Title XVI. CAR at 21 (noting that Plaintiff applied for SSI benefits). Plaintiff contends that the ALJ's failure to develop her Title II claim was error. ECF No. at 16 at 36.

In a footnote, Defendant responds that the ALJ did not discuss Plaintiff's Title II application because Plaintiff did not qualify for SSDI benefits. ECF No. 18 at 33 n.25. Plaintiff stated that she became disabled on November 9, 2012, but her insured status expired June 30, 2012. Id. (citing CAR at 179, 200). Defendant cites to a Disability Report completed by an agency interviewer for the proposition that Plaintiff was last insured June 30, 2012. Id. (citing CAR at 200). Because Plaintiff alleged onset of disability *after* her insured status expired, she could not qualify for Disability Insurance Benefits. Id.

Plaintiff replies that the Disability Report and the interviewer's notation is not binding upon the ALJ. ECF No. 19 at 18. Plaintiff also argues that the ALJ must be the first to make a finding as to Plaintiff's insured status, and that this Court cannot usurp that role. Id. at 18–19.

The Court need not address the parties' discrete arguments. The Court cannot affirm the ALJ's decision upon grounds on which the ALJ did not rely.  See, e.g., Revels, 874 F.3d at 654. The grounds upon which the ALJ's decision must be reviewed are those upon which the record indicates her decision was based. Id. (citing Chenery Corp., 318 U.S. at 87); see Treichler, 775 F.3d

at 1102. The ALJ offered no reason for not addressing Plaintiff's Title II application. The Court is constrained to review only the reasons that the ALJ asserts. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court cannot affirm the decision based upon speculation. The issue is remanded for consideration of whether Plaintiff's qualifies for Title II benefits.

## VI. PROFESSIONALISM

Before concluding, the Court expresses its significant disappointment over the unprofessional tenor of Plaintiff's Counsel's briefs. See generally ECF Nos. 16, 19. Counsel is variously sarcastic, condescending, demeaning, and discourteous. See, e.g., ECF Nos. 16 at 23, 24, 25, 28, 31, 32; 19 at 4, 5, 6, 8, 14, 18. To name but a few of staggeringly many examples, Counsel impugns the integrity of the Administrative Law Judge and employees of the Social Security Administration, compares the ALJ's alleged errors to violent assault, and comes close to accusing Defense Counsel of misconduct. ECF Nos. 16 at 23, 24; 19 at 4, 6, 8, 14, 18.

By specific way of example, when discussing the ALJ's alleged error in neglecting to commission an IQ test for Plaintiff, Counsel appends a footnote. ECF No. 16 at 24 n.10. There, Counsel references the film *The Big Sleep* and writes:

> [I]t may fairly be said that the ALJ's conduct in not obtaining IQ testing and then rejecting Ms. Frazier's claim of cognitive impairment based on the absence of IQ testing is most akin to that of the villain who beats someone's teeth out and then kicks them in the stomach for mumbling.

Id. Counsel is wrong. It cannot be said that the ALJ's failure to obtain an IQ test, especially when there is no indication of any bad faith on the ALJ's part in resolving Plaintiff's case, is akin to violently kicking in someone's teeth. That Counsel concluded it was acceptable to even suggest that the ALJ's decision is analogous to violence is, quite frankly, bewildering.

Counsel does not stop there. He blithely calls a decision of the ALJ "poppycock." Id. at 28. He implies the ALJ lazily handled Plaintiff's case. Id. at 31 ("The ALJ trots out [a] threadbare cliché . . . ."). Id. at 31. He calls medical professionals and frontline agency employees "apparatchiks,[19]" implying that they are blindly loyal to Social Security Administration regulations

---

[19] For the unaware, an "apparatchik," historically a bureaucratic functionary of the Communist Party of the Soviet Union, is a blindly devoted official or member of an organization.

at the cost of thought and integrity.[20] ECF No. 19 at 5, 18. And Counsel accuses Defense Counsel of disingenuously obfuscating evidence and law.[21] ECF No. 19 at 4, 6 n.3, 8. The Court is not sure why Counsel believes such attacks are appropriate or clever. They are neither.

Alongside being bereft of persuasive power, Counsel's attacks are distracting. More importantly, they are disrespectful. This is a court of law. It is not a forum for Counsel air his personal dissatisfaction with the Social Security Administration or condescend to Administrative Law Judges and opposing counsel. The Court will *not* countenance disrespect towards opposing attorneys or employees of coordinate branches of government. The Court cannot imagine a legal forum in which such conduct is appropriate. It certainly is not appropriate in the Eastern District of California. Indeed, the Eastern District's rules command that attorneys admitted to practice before the Court shall not engage in any conduct that degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice.[22] L.R. 180(e).

The Court recognizes that Counsel must be a zealous advocate for his client. But there is a line between zealous advocacy and obvious unprofessionalism. Despite what Counsel's actions imply, that line is neither thin nor hazy. Here, Counsel crossed the line several steps behind him. The Court *expects* that he will not cross it again if he wishes to avoid sanctions.

## VII. CONCLUSION

After having found error, the Court retains discretion to remand a case for additional evidence or simply direct an award of benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017). A case may be remanded under the applicable "credit-as-true" rule for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would not be useful; (2) the ALJ has not provided legally adequate reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. Garrison, 759 F.3d at 1020.

---

[20] Counsel also denigrates the physicians reviewing Plaintiff's file on the agency's behalf as "hired guns." Id. at 14.
[21] Defense Counsel also argues that Counsel misstates law, but in a manner common to arguing over application of precedent. See ECF No. 18 at 30.
[22] The Eastern District has further adopted the Rules of Professional Conduct of the State Bar of California and applicable court decisions as the standards of professional conduct in this Court. Those rules similarly prohibit conduct prejudicial to the administration of justice. Cal. Rules Prof'l Conduct r. 8.4.

1   / / /

2               Even if all the conditions of the "credit-as-true" rule are met, the Court retains

3   flexibility to remand if the overall record creates serious doubt about whether a claimant is disabled

4   within the meaning of the Social Security Act. Id. at 1020–21; see also Dominguez v. Colvin, 808

5   F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

6   proceedings would serve no useful purpose, it may not remand with a direction to provide

7   benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is

8   uncertain and ambiguous, the proper approach is to remand the case to the agency.").

9               Here, remand is appropriate to allow the ALJ to reanalyze Plaintiff's claims in the

10  light of the evidence and errors noted above. This matter will be remanded under sentence four of

11  42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the

12  deficiencies noted above.

13              Accordingly, IT IS HEREBY ORDERED that:

14              1.      Plaintiff's motion for summary judgment (ECF No. 16) is **GRANTED**;

15              2.      Defendant's cross-motion for summary judgment (ECF No. 18) is **DENIED**;

16              3.      The Commissioner's decision is reversed;

17              4.      This case is remanded for further proceedings consistent with this order; and

18              5.      The Clerk of the Court shall enter judgment for Plaintiff and close this case.

19

20  Dated:  March 24, 2021

21                                                    _____

22                                                    DENNIS M. COTA
                                                      UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28